Mr. Gregory L. Coler Secretary Department of Health and Rehabilitative Services 1317 Winewood Boulevard Tallahassee, Florida 32399-0700
Dear Secretary Coler:
You ask the following question:
 What are the necessary requirements for the district human rights advocacy committees' access to confidential information from the Department of Health and Rehabilitative Services?
In sum, I am of the opinion that:
 Requests for access to confidential information regarding clients of the Department of Health and Rehabilitative Services by the district human rights advocacy committees must be made by the district committee by majority vote and must be in writing.
A question has been raised by the Statewide Human Rights Advocacy Committee as to whether the Department of Health and Rehabilitative Services (HRS) may require a human rights advocacy committee to make its request for access to confidential material from HRS in writing.
The district human rights advocacy committees were established as a third-party mechanism for protecting the constitutional and human rights of any HRS client within a program or facility funded, licensed, or regulated by HRS.[1] It is the responsibility of the committees to receive, investigate and resolve reports of abuse or deprivation of constitutional and human rights.[2] To accomplish this, s. 20.19(10)(g)2., F.S., provides in part:
 For the purposes of such investigation, the committee shall have access to all client files, reports, and records, including those from all other agencies and departments of government, except matters under investigation by law enforcement authorities or judicial authorities, and shall have access to all client records, files, and reports in any program, service, or facility that is operated, funded, licensed, or regulated by the department for the purpose of investigating a specific complaint of abuse or deprivation of constitutional or human rights of clients of the department. . . . The committee, by majority vote, may request in writing and shall be granted access to all information relevant to the investigation. (e.s.)
It is a fundamental rule of statutory construction that the intent of the Legislature as gleaned from the statute is the law.[3]
Thus, in the case of any reasonable difference as to meaning or application of a statute, the legislative intent is the polestar by which the statute must be interpreted.[4]
The language emphasized above was adopted by the Legislature in Ch. 84-226, Laws of Florida. In AGO 87-8 this office, having reviewed the legislative history of Ch. 84-226, supra, stated that it was the Legislature's intent to expand the access rights of district human rights advocacy committees to HRS client files and records in the custody of agencies and departments of government other than HRS.
However, an examination of that legislative history also indicates that the Legislature sought to require the district human rights advocacy committees to require a written request upon majority vote of the committee to request information relevant to its investigation. For example, the staff analysis on CS/HB 1020 states in part that the bill requires "that [human rights advocacy committees] must have a majority vote prior to requesting any client record, and that their request for the record must be in writing."[5]
In light of the language of the statute and the intent of the Legislature in adopting such language as evidenced in the legislative history surrounding its adoption, I am of the opinion that requests for records of HRS clients by district human rights advocacy committees must be upon majority vote of the members of the committee and must be in writing.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 20.19(10)(g)1., F.S. And see, s. 20.19(9)(g)1., imposing similar powers on the Statewide Human Rights Advocacy Committee. Section 20.19, F.S., was amended by Chs. 88-337 and 88-235, Laws of Florida. Section 2, Ch. 88-235, supra, renumbers subsections (7) through (19) as subsections (9) through (21).
[2] Section 20.19(10)(g)2., F.S.
[3] See, e.g., Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla. 1983).
[4] Parker v. State, 406 So.2d 1089 (Fla. 1981). And see, Drury v. Harding, 461 So.2d 104 (Fla. 1984) (interpretation of statute which leads to intent obviously not designed by the Legislature will not be adopted).
[5] Staff Analysis, Committee on Health and Rehabilitative Services, House of Representatives, CS/HB 1020, July 5, 1984. CS/HB 1020 was subsequently incorporated into CS/HB 988 and enacted into law as s. 17, Ch. 84-226, Laws of Florida. And see, Letter to Representative Hamilton Upchurch, Chairman, House Judiciary Committee, from Representative Irma Rochlin, sponsor of HB 1020, dated May 14, 1984, stating: Ample protection also exists in the bill for accessing information by the [human rights advocacy] committees. When an abuse complaint is received, it is presented to the committees for determination of the need for information. If it is determined access is necessary, a written request upon majority vote is required to request information relevant to the investigation. (e.s.)